THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM F. WINGATE,                    )
                                       )
                                       )   Case No.      15-CV-0822-RAJ
                                       )
                    Plaintiff,         )
                                       )   ORDER
           vs.                         )
                                       )
CITY OF SEATTLE, SEATTLE POLICE        )
DEPARTMENT, AND CYNTHIA A.             )
WHITLATCH, in her official and individual )
capacities,                            )
                                       )
                    Defendants.        )
_____)

## I.  INTRODUCTION[1]

This is a civil rights action in which Plaintiff William Wingate alleges that then-Seattle police officer Cynthia Whitlatch unlawfully arrested him. Dkt. # 14. Mr. Wingate

---

[1] The Court strongly disfavors footnoted legal citations.  Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e).  Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult."  *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014).  The Court strongly discourages the parties from footnoting their legal citations, and in this case much of their legal arguments, in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

sued Ms. Whitlatch, in her official and individual capacity, as well as the City of Seattle and the Seattle Police Department ("City Defendants"). The Defendants filed motions for summary judgment for all claims, including any municipal liability. Dkt. ## 82, 88.

For the reasons stated below, the Court **GRANTS in part** and **DENIES in part** Ms. Whitlatch's motion, and **GRANTS** the City Defendants' motion.

## II. BACKGROUND

On July 9, 2014, then-Seattle Police Officer Cynthia Whitlatch was on patrol when she claimed that William Wingate, a seventy year old African American, swung his golf club at her car, potentially endangering both the officer and the public. Dkt. #84-1 (Whitlatch Decl., Ex. B.). Mr. Wingate claims, however, that he had been using the golf club as a cane for two decades and was peacefully walking down the street when Ms. Whitlatch suddenly accosted him. Dkt. # 14. Ms. Whitlatch's in-car video shows her confronting a confused Mr. Wingate, who does not appear to be threatening either the officer or the public. Dkt. # 86-1 (Pfeifer Decl., Ex. A.). Ms. Whitlatch stood by her car door as she asked Mr. Wingate to drop the golf club, which she described as a weapon. *Id.* It appears from the in-car video that Ms. Whitlatch even un-holstered her nightstick as a prophylactic measure. *Id.* When Mr. Wingate refused to drop the golf club, Ms. Whitlatch called for back-up help, and when those officers arrived, Mr. Wingate was arrested and booked in King County Jail on harassment and obstruction charges. Dkt. #84-1 (Whitlatch Decl., Ex. A.). Mr. Wingate spent the remainder of the day as well as the entire night in jail. Dkt. #14.

On July 10, 2014, the prosecutor charged Mr. Wingate with Unlawful Use of a Weapon to Intimidate. Dkt. #83-3 (Trivett Decl., Ex. C.). Mr. Wingate entered into a dispositional continuance agreement with the prosecutor whereby Mr. Wingate agreed to not violate any laws or possess a firearm or any weapon for two years and, if successful, the prosecutor would dismiss the charge. Dkt. # 83-3 (Trivett Decl., Ex. E.).

After Mr. Wingate was charged, Ms. Whitlatch personally contacted the prosecutor to find out the status of the case.  Dkt. # 99-8 (Sargent Decl., Ex. H.).  Ms. Whitlatch asked the prosecutor why the charge of obstruction was dropped, and expressed her wish to see Mr. Wingate charged.  *Id.*  Ms. Whitlatch told the prosecutor that Mr. Wingate's behavior was unacceptable, and that charges were necessary to send a message to Mr. Wingate.  *Id.* The prosecutor responded that there would be problems proving obstruction given the facts of the case, especially considering that Mr. Wingate "was not brandishing [the golf club] or threatening the officer at the time of the obstruction."  *Id.*, *see also* Dkt. # 98, at p. 5.  The prosecutor informed Ms. Whitlatch that Mr. Wingate agreed to the dispositional continuance on the charge of Unlawful Use of a Weapon to Intimidate.  Dkt. # 99-8 (Sargent Decl., Ex. H.).

On September 19, 2014, the prosecutor dismissed the charge against Mr. Wingate because he completed the conditions of the agreement.  Dkt. 83-3 (Trivett Decl., Ex. F.).

In January 2015, the Office of Professional Accountability ("OPA") opened an investigation into Ms. Whitlatch's behavior during the July 9, 2014 encounter with Mr. Wingate.  In the investigation, OPA reviewed Ms. Whitlatch's version of events from the day of the arrest and interviewed her twice regarding the arrest.  Dkt. # 98, at p. 7.  In her report from July 9, 2014, Ms. Whitlatch wrote that she made eye contact with Mr. Wingate before making a turn in an intersection.  Dkt. # 84-1, at p. 33 (Whitlatch Decl., Ex. B.).  Ms. Whitlatch wrote that she witnessed Mr. Wingate raise and swing the golf club, and that she heard Mr. Wingate hit a metal stop sign post.  *Id.*  As she drove by, Ms. Whitlatch looked through her rear window to witness Mr. Wingate look at Ms. Whitlatch and swing the golf club twice more toward her car.  *Id.*

On April 30, 2015, Ms. Whitlatch explained the events to Sergeant Bair of the Seattle Police Department.  Dkt. # 99-16 (Sargent Decl., Ex. P.).  Ms. Whitlatch stated that she merely witnessed movement, or a blur, out of the corner of her eye and heard a "big

clank," which she assumed was Mr. Wingate hitting a post with his golf club because she witnessed his swinging of the club from her rear window as she drove.  *Id.*  On July 16, 2015, Ms. Whitlatch spoke once more with Sergeant Blair.  Dkt. # 99-17 (Sargent Decl., Ex. Q.).  This time, Ms. Whitlatch explained that, after Mr. Wingate hit the post with his golf club, he crossed his body with the club and continued to glare at Ms. Whitlatch as she drove away.  *Id.*

On July 20, 2015, OPA sent a memo to Captain Paul McDonagh at the East Precinct regarding its investigation into Ms. Whitlatch's conduct on July 9, 2014.  Dkt. # 109-1 (Decl. Sargent, Ex. E.).  The OPA found that Ms. Whitlatch did not comply with police policies and was inappropriately aggressive toward Mr. Wingate.  *Id.*  The OPA further concluded that Ms. Whitlatch's actions were motivated by her racial bias against African Americans.  *Id.*  On September 15, 2015, the Chief of Police Kathleen O'Toole terminated Ms. Whitlatch due to her behavior during the July 9, 2014 stop and arrest of Mr. Wingate.  Dkt. # 109-1 (Decl. Sargent, Ex. F.).  O'Toole noted that "considerable circumstantial evidence indicat[ed] that" Ms. Whitlatch's inappropriate behavior toward Mr. Wingate was "motivated by bias."  *Id.*

In April 2015, Mr. Wingate sued the Defendants in the Superior Court of the State of Washington for King County.  Dkt. # 1.  On May 26, 2015, Ms. Whitlatch removed the matter to federal court.  *Id.*  On August 6, 2015, Mr. Wingate filed his Second Amended Complaint for damages against Defendants.  Dkt. # 14.  Mr. Wingate alleges violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983, violations of state laws against false arrest and false imprisonment, racial discrimination under Washington's Law Against Discrimination, and a state law claim for intentional infliction of emotional distress.  *Id.*  Mr. Wingate further alleges that the City Defendants are vicariously liable for Ms. Whitlatch's actions.  Dkt. # 95.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**III. ANALYSIS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).  Credibility determinations and the weighing of the evidence are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255.  For purposes of summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)).

In resolving a motion for summary judgment, the court may only consider admissible evidence.  *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).  At the summary judgment stage, a court focuses on the admissibility of the evidence's content, not on the admissibility of the evidence's form.  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

**A.  Plaintiff's 42 U.S.C. § 1983 Claims**

Mr. Wingate raises his constitutional challenges under 42 U.S.C. § 1983.  Dkt. # 14.  Under this statute, Mr. Wingate must prove that "(1) [he] suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state or federal law." *Lawson v. City of Seattle*, No. C12-1994-MAT, 2014 U.S. Dist. LEXIS 55883, *14 (W.D. Wash. 2014).  There is no question that Ms. Whitlatch was acting under color of state law, and therefore the Court may move on to address the constitutional violations alleged.

1.  <u>Fourth Amendment Violations</u>

Mr. Wingate alleges that Ms. Whitlatch stopped and arrested him on July 9, 2014 without reasonable suspicion or probable cause, respectively.  Dkt. # 14.  Mr. Wingate goes on to claim that these actions led to his false imprisonment.  *Id.*  To succeed on these claims, Mr. Wingate must ultimately prove that Ms. Whitlatch did not have probable cause to arrest him.  *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998); *see also Bradford v. City of Seattle*, No. C07-365-JPD, 557 F. Supp. 2d 1189, 1199 (W.D. Wash. 2008) ("The existence of probable cause vitiates any claim of unlawful arrest and acts as a complete defense to the liability of an officer under § 1983.") (internal citations omitted), *Cooper v. City of Newport*, No. 05-6303-TC, 2006 U.S. Dist. LEXIS 11571, *9 (D. Or. 2006) (finding that "probable cause is a complete defense to a federal or state claim of false arrest or imprisonment.").

Mr. Wingate voluntarily entered into an agreement to continue his case for dismissal or amendment of charges.  Dkt. ## 83-3 (Trivett Decl., Ex. E.), 86-1 (Pfeifer Decl., Ex. B.).  Pursuant to this agreement, Mr. Wingate stipulated to the underlying police reports "and/or other documents/materials attached to or accompanying" the

agreement.[2]  Dkt. # 83-3 (Trivett Decl., Ex. E.)[3]; *see also Cline v. City of Seattle*, No. C06-1369MJP, 2007 U.S. Dist. LEXIS 66393, *21 (W.D. Wash. 2007) (finding that a similar agreement "effectively left Plaintiff unable to challenge the evidence in the police report supporting probable cause.").  Therefore, due to Mr. Wingate's agreement, the Court is bound to analyze probable cause based solely on the underlying police reports. The underlying reports include Officer Chris Coles's primary police report and Ms. Whitlatch's police report.  If the underlying police reports support a finding of probable cause to arrest Mr. Wingate, then Mr. Wingate's claims arising from the Fourth Amendment must necessarily fail.

As an initial matter, the Fourth Amendment protects citizens from unreasonable searches and seizures, and precludes arrest without probable cause.  Brief seizures that fall short of a traditional arrest do not violate the Fourth Amendment "if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *Bradford v. City of Seattle*, No. C07-365-JPD, 557 F. Supp. 2d 1189, 1197-1198 (W.D. Wash. 2008) (internal quotations omitted).  In analyzing whether a so-called *Terry* stop is justified by an officer's reasonable suspicion, the Court considers whether, "in light of the totality of the circumstances, the officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Berber-*

---

[2] For this reason, the Court need not address Mr. Wingate's claims that Ms. Whitlatch fabricated evidence. Mr. Wingate stipulated to the facts laid out in the underlying police records.

[3] The agreement specifically provided the following:

> Defendant acknowledges that his/her violation or failure to comply with any of the conditions of this agreement will result in the court determining his/her guilt of the charged crime(s) based solely on the police reports and/or other documents/materials attached to or accompanying this agreement.  If applicable, Defendant acknowledges that his/her compliance with this agreement will result in the court determining his/her guilt of the reduced crime(s) based solely on the police reports attached to or accompanying this agreement.  Defendant waives any defense to the charged crime(s) or reduced crime(s) and stipulates to the facts in the police reports incident #14-222942.

*Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007).  Because of the agreement that Mr. Wingate voluntarily entered into, this Court is limited to consulting only the underlying police reports of Officer Coles and Ms. Whitlatch.[4]  Based on those reports, the Court finds that Ms. Whitlatch had a reasonable suspicion that Mr. Wingate was swinging his golf club in a way that might endanger the public.  Dkt. # 84-1 (Whitlatch Decl., Ex. B.)[5].  With the probable cause that Mr. Wingate agreed to, the Court must find that Ms. Whitlatch had a reasonable and articulated reason for investigating further into the situation.

Separate from the determination of reasonable suspicion to stop Mr. Wingate, the Court must determine whether Ms. Whitlatch had probable cause to arrest Mr. Wingate.  To determine probable cause, the Court looks to whether, under the totality of the circumstances known to the arresting officer, "a prudent person would have concluded that there was a fair probability that the suspect had committed a crime."  *Hart v. Parks*, 450 F.3d 1059, 1065-1066 (9th Cir. 2006) (internal quotations omitted), *Bradford v. City of Seattle*, No. C07-365-JPD, 557 F. Supp. 2d 1189, 1199 (W.D. Wash. 2008).  The Court is again limited, pursuant to Mr. Wingate's agreement, to the underlying police records; these records restrict the Court from considering any other factors.  Indeed, according to the stipulated records, Ms. Whitlatch positively identified Mr. Wingate swinging the golf club in a way that could endanger the public, and he refused to drop the golf club after several demands.  Dkt. # 84-1 (Whitlatch Decl., Ex. B.).  Therefore, according to the police records on file, Ms. Whitlatch had probable cause to arrest Mr. Wingate for harassment and obstructing a police officer.

---

[4] The parties do not contest that these are the only reports attached to the agreement that Mr. Wingate entered into with the city prosecutor.

[5] Ms. Whitlatch wrote in her police report that she witnessed "Wingate raising the golf club and saw him start to swing it."  Dkt. # 84-1(Whitlatch Decl., Ex. B).  Ms. Whitlatch continued, "As I passed I heard the loud metallic sound of the golf club hitting the metal stop sign post. . . . I observed Wingate, while still looking toward me, swing the golf club toward my car twice as I was continued [sic] driving slowly northbound."  *Id.*  Ms. Whitlatch went on to report that she "told Wingate to put the golf club down approximately 20-25 times."  *Id.*

Even if the Court finds that probable cause existed, Mr. Wingate argues that the City of Seattle dismissed the charges against him in a favorable termination.  This is not the case.  The City of Seattle dismissed Mr. Wingate's charges due to "satisfactory completion of all conditions of dispositional continuance."  Dkt. # 83-3 (Trivett Decl., Ex. F.).  Despite Mr. Wingate's arguments to the contrary, this was not a favorable termination such that Mr. Wingate was acquitted or such that an unqualified dismissal was entered in his behalf.  *See Cline*, 2007 U.S. Dist. LEXIS 66393, at *22 (finding that the plaintiff satisfied the terms of the conditional disposition; he "was not acquitted on the harassment charge, nor did he receive an unqualified dismissal of his case.").  Instead, the charges were dismissed because Mr. Wingate successfully met the requirements of the agreement.  The records do not indicate otherwise, and the Court will not guess at the intentions of the prosecution beyond what is recorded on the dismissal form.  If Mr. Wingate had wanted to challenge the determination of probable cause in order to reserve his Section 1983 claims, he needed to pursue his case to an acquittal or unqualified dismissal.  *See id.*, *citing Roesch v. Otarola*, 980 F.2d 850, 853 (2d Cir. 1992).  Or, if the dismissal was unqualified rather than as a result of satisfaction of the agreement, then the prosecutor or the City needed to note this as such.  No such record exists.

Mr. Wingate was arrested on account of harassment and obstruction, but his actual charge—Unlawful Use of a Weapon to Intimidate—was separate and distinct from the initial counts.  The Court acknowledges that it was not involved in any plea negotiations and therefore cannot know how the parties arrived at the final conditional disposition.  However, it is likely that Mr. Wingate was presented with a Hobson's choice: he could stand on his right to oppose the charges and run the risk of facing a maximum sentence of 364 days in jail and a $5000 fine and potentially more serious charges or he could take the benefit of the plea with a dismissal 24 months later.  *See* Dkt. # 83-3 (Trivett Decl., Ex. E.).  Under these circumstances the obvious benefit to the City Defendants is a plea

restricted to police reports to establish probable cause.  The clear benefit to the City is to lock a defendant to a plea even if the circumstances of the original police reports and claimed probable cause were premised upon discriminatory police conduct.  In this case, the police reports Mr. Wingate agreed to undoubtedly evidenced probable cause which in essence immunized the City Defendants from any arrest or charging error.  The Court is highly suspicious that the City Defendants did not have some idea of an error when the prosecutor made the decision to dismiss the charges merely 71 days into a 24-month conditional disposition.  Notwithstanding, the outcome remains the same.  There is no Fourth Amendment violation here because the Court finds that the police reports alone support a finding of probable cause.

2.  Fourteenth Amendment Violations

To succeed on a claim alleging a violation of the Fourteenth Amendment's Equal Protection clause, Mr. Wingate must prove that Ms. Whitlatch "acted in a discriminatory manner and that the discrimination was intentional."  *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003).  Mr. Wingate must present evidence "sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially motivated."  *Id.* at *22-23 (internal quotations and citations omitted).  Defendants do not offer authority showing that the Court remains bound by the police records at this juncture, and therefore the Court will review any admissible evidence in its analysis with regard to this claim.

On July 20, 2015, Director Pierce Murphy and Captain Dick Reed, from the OPA, submitted a report regarding Ms. Whitlatch's alleged misconduct from the July 9, 2014 arrest of Mr. Wingate.  Dkt. # 109-1 (Sargent Decl., Ex. E).[6]  Among its findings, OPA found that Ms. Whitlatch held racially biased views that permeated into her work

---

[6] This is a business record, Fed. R. Evid. 803(6), and the Court believes that Mr. Wingate could properly authenticate the document at trial.

environment.  *Id.*  Specifically, OPA concluded that Ms. Whitlatch's initial decision to approach Mr. Wingate was made in a cloud of racial bias such that she perceived blurry movement and an indiscriminate "clang" as aggressive and dangerous actions even though her training and prudence would have suggested that the blur and noise could be associated with a nearby construction site.  *Id.*

Even if her initial decision was reasonable, the report found that Ms. Whitlatch approached Mr. Wingate "in an extremely aggressive and confrontational fashion" that was clearly uncalled for, as evidenced by the contradicting and calm demeanor shown by other officers who arrived at the scene.  *Id.*; *see also* Dkt. # 109-1 (Sargent Decl., Ex. F) [7] ("The unreasonableness of your actions is highlighted by their contrast with that of another officer, who arrived after you confronted the individual, spoke to him, and immediately obtained the golf club and compliance from the individual.").  Despite having time to assess the situation—finding that Mr. Wingate was nearly seventy years old, confused, and had a slight hearing issue—Ms. Whitlatch doubled down on her aggressive approach, even brandishing a night stick while taking cover behind her car door.  Dkt. # 109-1 (Sargent Decl., Ex. F).  The OPA report concluded that Ms. Whitlatch "insisted on moving forward with official charges when there were other possible options available to her . . . ."  Dkt. # 109-1 (Sargent Decl., Ex. E); *see also* Dkt. # 109-1 (Sargent Decl., Ex. F) ("There were numerous opportunities to assess different tactics and take a softer approach to resolve the incident.").  Ms. Whitlatch acted outside of her official training, and the OPA found that her misconduct was not so general as to affect the population equally, but instead was born out of certain insidious racial views toward African Americans.  *Id.* ("However, in her own written and spoken words, the Named Employee provided evidence which indicates that that [sic.] she views events in her

---

[7] This is a business record, Fed. R. Evid. 803(6), and the Court believes that Mr. Wingate could properly authenticate the document at trial.

workplace in a racially biased manner and that her racial views impact her reaction to the work of the police.").

There is no evidence that Ms. Whitlatch used racial slurs or took direct actions on July 9, 2014 to show her animus toward African Americans. However, discriminatory behavior is not a perfect dichotomy. *See Lowe v. Monrovia*, 775 F.2d 998, 1011 (9th Cir. 1985) ("Determining the existence of a discriminatory purpose demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."). There is an abundance of evidence that could convince a reasonable jury that Ms. Whitlatch decided to approach and arrest Mr. Wingate, and treat him in an overly hostile manner, based on his race.

## B. Plaintiff's State Law Claims regarding False Arrest and False Imprisonment

Mr. Wingate's state law claims regarding false arrest and false imprisonment depend on a finding, or not, of probable cause. *McBride v. Walla Walla County*, 975 P.2d 1029, 1032 (Wash. Ct. App. 1999) ("The existence of probable cause is a complete defense to an action for false arrest, false imprisonment, or malicious prosecution."). The Court's analysis is similar to that in Section A.1., and the Court is once more bound by the evidence in Officer Coles's and Ms. Whitlatch's police reports because of the agreement that Mr. Wingate voluntarily entered into with the prosecuting attorney. Therefore, based on the finding of probable cause above, the Court finds that Mr. Wingate's state law claims regarding false arrest and false imprisonment fail.

## C. Plaintiff's WLAD Claim regarding Racial Discrimination

Mr. Wingate alleges a claim for racial discrimination under Washington's Law Against Discrimination ("WLAD"). Dkt. # 14; WASH. REV. CODE §§ 49.60.030, 49.60.215. To succeed on this claim, Mr. Wingate must prove that there was "particularized treatment, consciously motivated by race." *Turner v. City of Port*

*Angeles*, No. C09-5317RBL, 2010 U.S. Dist. LEXIS 114447, *26 (W.D. Wash. 2010); *see also McKinney v. City of Tukwila*, 13 P.3d 631, 642 (Wash. Ct. App. 2000) (finding that "an action for discrimination under RCW 49.60.215 requires a showing that the unequal treatment was motivated by race."). When applied to police conduct, Washington courts look to whether the officers treated those inside a protected class equally to those outside the protected class. *See Turner*, 2010 U.S. Dist. LEXIS 114447, at *26.

Mr. Wingate did not present evidence showing that Ms. Whitlatch approached seventy year old men who are not African American just as aggressively as she approached Mr. Wingate. However, the OPM report, coupled with the Seattle Police Department's Disciplinary Action Report directed to Ms. Whitlatch, present a genuine issue of material fact as to whether Ms. Whitlatch's racial bias resulted in her hyper aggressive treatment of Mr. Wingate that ultimately led to his arrest. Even if Ms. Whitlatch was not directly discriminatory on account of race, these reports tend to prove that Ms. Whitlatch treated Mr. Wingate differently than other, similarly situated citizens due to racial animus. *See Evergreen Sch. Dist. v. Wash. State Human Rights Com*, 695 P.2d 999, 1006 (Wash. Ct. App. 1985) ("One need not be obvious or forthright to effect a discrimination . . . discrimination may arise just as surely through 'subtleties of conduct' as through an openly expressed refusal to serve.") (internal citations omitted).

## D. Plaintiff's State Law Claim regarding Intentional Infliction of Emotional Distress

Mr. Wingate must prove three elements to succeed on his claim for intentional infliction of emotional distress: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Hong Ha v. City of Liberty Lake*, No. CV-08-382-RHW2010, U.S. Dist. LEXIS 110346, *22 (E.D. Wash. 2010), *citing Kloepfel v. Bokor*, 66 P.3d 630

(Wash. 2003). A claim for intentional infliction of emotional distress requires the alleged conduct to be objectively "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

Mr. Wingate claims that he was peacefully walking on the street when Ms. Whitlatch suddenly accosted him. Ms. Whitlatch offered different versions of the events from her encounter with Mr. Wingate, some of which are totally contradictory to the events recorded in the police reports. Dkt. # 109-1 (Sargent Decl., Ex. F.). Specifically, in her police report, Ms. Whitlatch stated that she clearly watched Mr. Wingate raise and swing his golf club. Dkt. # 84-2 (Whitlatch Decl., Ex. B.). Ms. Whitlatch later told Sergeant Blair that she merely saw a blur and heard a clang. Dkt. # 99-16 (Sargent Decl., Ex. P.). Ms. Whitlatch's final accounting of the events confirmed that she did not actually witness Mr. Wingate swinging a golf club in a threatening manner. Dkt. # 109-1 (Sargent Decl., Ex. F.). As evidenced by the in-car video footage as well as the OPA and termination reports, Ms. Whitlatch treated Mr. Wingate with extreme aggression, and eventually arrested him while he was still in a state of confusion. *Id.*; *see also* Dkt. # 109-1 (Sargent Decl., Ex. E), Dkt. # 86-1 (Pfeifer Decl., Ex. A.). The OPA report and the termination determination in this case show that Ms. Whitlatch treated Mr. Wingate in a manner that was wholly inappropriate, and Mr. Wingate claims that he has suffered post-traumatic stress and depression as a result. Dkt. # 14.

No rational person, confronted with the force of the law as Mr. Wingate was, would consider this encounter to be the "price of living among people." *Brower v. Ackerley*, 943 P.2d 1141, 1148 (Wash. Ct. App. 1997). Indeed, no rational person would think that a night in jail under the specific circumstances of this case was a mere "indignity[y], threat[ ], annoyance [ ], petty oppression[ ], or other trivialit[y]." *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003). Mr. Wingate has presented evidence that

ORDER-14

creates a genuine factual dispute regarding this allegation, and therefore Mr. Wingate is entitled to have his claim tried before a jury.

### E.  Plaintiff's Vicarious Liability Claim regarding City Defendants

The City Defendants seek summary judgment on Mr. Wingate's municipal liability claim.  Under *Monell*, a municipality cannot be held liable for constitutional injuries inflicted by its employees on a theory of *respondeat superior*.  *Monell v. New York City Dep't of Public Servs.*, 436 U.S. 658, 691 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694.

A plaintiff seeking to establish municipal liability under Section 1983 may do so in one of three ways: 1) the plaintiff may demonstrate that a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" 2) the plaintiff may demonstrate that the individual who committed the constitutional violation was an official with "final policy-making authority and that the challenged action itself thus constituted an act of official government policy;" or 3) the plaintiff may demonstrate that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).

Mr. Wingate is clear that he is *not* asserting a *Monell* claim against the City Defendants, nor is he directly asserting any federal violations against the City Defendants.  Dkt. # 95.  Mr. Wingate did not provide any evidence or argument that he experienced constitutional violations pursuant to the City Defendants' policies or longstanding practices.  Mr. Wingate did not, and could not, present evidence that Ms. Whitlatch was an official with final policy-making authority.  Mr. Wingate certainly did

not show that Ms. Whitlatch had final policy-making authority and ratified a subordinate's unconstitutional decision or action with regard to Mr. Wingate's arrest. Furthermore, Mr. Wingate did not assert a separate cause of action against the City Defendants. *Id.* Mr. Wingate is plainly suing the City Defendants pursuant to the theory of vicarious liability. *Id.* Therefore, based on the above analysis, Mr. Wingate cannot sustain any claims against the City Defendants.

**IV. CONCLUSION**

For all the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' motions for summary judgment. The Court **GRANTS** Ms. Whitlatch's motion for summary judgment regarding Mr. Wingate's Fourth Amendment claims arising out of 42 U.S.C. § 1983, as well as his state law claims for unlawful arrest and imprisonment. Dkt. # 82. The Court **DENIES** Ms. Whitlatch's motion for summary judgment regarding Mr. Wingate's Fourteenth Amendment claim arising out of 42 U.S.C. § 1983, as well as his state law claim for racial discrimination. *Id.* The Court **DENIES** Ms. Whitlatch's motion for summary judgment regarding Mr. Wingate's claim for intentional infliction of emotional distress. *Id.* The Court **GRANTS** the City Defendants' motion for summary judgment. Dkt. # 88.

Dated this 26th day of July, 2016.

*Richard A Jones*
_____
The Honorable Richard A. Jones
United States District Judge

ORDER- 16