The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM F. WINGATE,<br><br>              Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE, SEATTLE POLICE DEPARTMENT AND CYNTHIA A. WHITLATCH, in her official and individual capacities,<br><br>              Defendants. | No. 2:15-cv-00822-RAJ<br><br>**PLAINTIFF'S TRIAL BRIEF** |

## I.    INTRODUCTION

William Wingate alleges claims against Defendant Cynthia Whitlatch under U.S.C. § 1983 arising out of violations of his Equal Protection Clause rights of the Fourteenth Amendment to the United States Constitution stemming from his arrest and incarceration beginning on July 9, 2014. He also alleges violations of the Washington Law Against Discrimination and an intentional infliction of emotional distress cause of action arising out of the same facts.

Plaintiff's Trial Brief - 1
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

## II. FACTS

On a sunny Wednesday in July 2014, William Wingate was doing what he did every Wednesday. He was walking from his Northgate home to the Central District to pick up the Facts newspaper to take to friends and fellow church members who were now in an assisted living center. At about one in the afternoon, he had not yet reached his destination. As he was standing on the corner of 12th and East Pike Street in the Capitol Hill neighborhood of Seattle, a police car "tactically" pulled up beside him. When the patrol car stopped, Mr. Wingate did not notice at first. He was thinking about his day and listening to sports radio on the ear bud he had in his ear. Even if he had noticed, he would not have been alarmed—he is a military veteran who had been in the military police. More recently, he spent thirty-five years driving a bus—most of the time in Seattle. He had worked cooperatively with the Seattle Police for all those years. He relied on this history with police when he mentored others. As an elder in the First AME church in Seattle he counseled many young African American men and boys telling them that as long as they followed the rules, they would have no trouble with the police, because he had followed the rules for 69 years and had never been in trouble with the police.

It was with this historical backdrop that Mr. Wingate responded with confusion when then Seattle Police Acting Sergeant Cynthia Whitlatch stood behind her open car door yelling at Mr. Wingate to "drop his weapon." Ms. Whitlatch's overtly aggressive and hostile demeanor stunned and scared Mr. Wingate. He knew that he had done nothing wrong, but he began to think that Ms. Whitlatch was accusing him of wrongdoing to "set him up." In response to Ms. Whitlatch's repeated demands that he drop the golf club he was using as a

Plaintiff's Trial Brief - 2
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

cane and her threats to arrest him, Mr. Wingate responded that he wanted her to call someone else to come to the scene so that there could be "a witness".

Two other policemen responded to Ms. Whitlatch's calls for "backup." Officers Christopher Coles and Ben Archer walked toward Mr. Wingate and Ms. Whitlatch as she continued to yell at him. After the witnesses arrived Mr. Wingate immediately walked to handed the golf club to Officer Coles without being asked. Mr. Wingate began telling both of the officers who arrived that he had done nothing wrong and that he had never even seen Ms. Whitlatch before. Ms. Whitlatch, who had been standing on the driver's side of the patrol car, came around the front of the car replacing her police baton in her service belt. She began to talk to Mr. Wingate in demeaning tones—"come here, come over here." She made Mr. Wingate lean on the hood of the police car while holding his wrist against the hot car and digging in his pants pockets. She searched his pockets throwing his belongings on the hood of the car. Mr. Wingate's hands were then pulled behind his back so that he could be handcuffed still obviously confused. Officers Coles and Archer then marched Mr. Wingate down the sidewalk of the busy summer street to the East Precinct without the benefit of his walking aid.

When the officers and Mr. Wingate arrived at the East Precinct, they put Mr. Wingate in a "holding cell" while he remained handcuffed. The then 69-year-old man who had walked several miles in the warmth of the Seattle summer and who had just experienced an extremely traumatic event asked for water. The officers declined to give him any water although they later claimed to have done so.

Another officer spoke briefly with Mr. Wingate at the East Precinct about the arrest. The officer suggested to Mr. Wingate that he was going to be released. Instead, a police van

arrived to transport him to the King County Jail. Mr. Wingate remained handcuffed as he exited the East Precinct to get into the van. The van driver told Mr. Wingate to board the van from the rear door. The floor of the van was a couple of feet off from the garage floor. Mr. Wingate stumbled attempting to get into the van wrenching his back. The officer kicked over a stool for Mr. Wingate to use to board the van. On the way to the jail, Mr. Wingate worried that no one knew where he was and that he did not have any means of identification. He wondered if he was going to arrive at the jail alive.

Mr. Wingate was booked at the King County jail. He was photographed and fingerprinted. Mr. Wingate was subjected to a body cavity search, including having his testicles squeezed. The guards placed him in a cell with several other men. After a completely sleepless night in a miserably uncomfortable and noisy environment where men snored loudly, Mr. Wingate was escorted to a courtroom for an arraignment. A Rule 9 intern working with the King County Public Defender's Office counseled him to sign a Dispositional Continuance to the charge of "Unlawful Use of A Weapon" telling him that it was the way to get out of jail. After the arraignment, Mr. Wingate was returned to the jail and spent several more hours waiting to be released.

Ms. Whitlatch was not satisfied that Mr. Wingate was arrested and criminally charged. So, she contacted the Assistant City Attorney responsible for making charging decisions for the City to urge him to add Obstruction to the charges against Mr. Wingate alleging he was the most "obstinate, uncooperative, and obstructive suspects [she'd] dealt with during [her] 17+ years in patrol. He received warning after warning. I would like to see him charged. The behavior was completely unacceptable toward any law enforcement officer. It would be nice if

Plaintiff's Trial Brief - 4
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

that message would be made clear with charges." Whitlatch email to John Mason, July 21, 2014.

Mr. Wingate was embarrassed and ashamed about the arrest. He decided not to tell anyone about it except his best friend, Oscar Ackerman. He did not tell his family, he did not tell his doctor, he did not tell his pastor. But, Mr. Ackerman told his neighbor, Dawn Mason, about the arrest because he was so appalled that this gentle pillar of the community would be subjected to this abuse. Ms. Mason is a community activist who became immediately involved in trying to expose Ms. Whitlatch's abuse of Mr. Wingate. Ms. Mason contacted several police officials and the N.A.A.C.P.

Ms. Mason got a meeting with then Assistant Police Chief Nick Metz and Captain Pierre Davis to talk about Ms. Whitlatch's racially motivated stop of Mr. Wingate. After the meeting, Captain Davis verbally counseled Ms. Whitlatch about her demeanor and about de-escalation measures that she might have taken. Ms. Mason went a step further and met with the City of Seattle Prosecutor and one of his deputies to discuss the fact that Mr. Wingate now has an arrest record. The Prosecutor's office instigated a dismissal of the charges against Mr. Wingate, which occurred in September 2014. That might have been the end of the story, except the Stranger newspaper got wind of Mr. Wingate's arrest and began publishing a series of articles beginning in January 2015.

The Stranger's involvement in the matter began to expose Ms. Whitlatch's motive for stopping, detaining, and arresting the nearly 70 year-old military veteran on that summer day in July 2014. In January 2015, the Stranger published Cynthia Whitlatch's Facebook posting

Plaintiff's Trial Brief - 5
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

that was a response to an article about the killing of Michael Brown in Ferguson, Missouri. In the post, Ms. Whitlatch's rambling stream of consciousness is as follows:

> If you believe that blacks are NOT accusing white America for their problems then you are missing the point of the riots in Ferguson and the chronic black racism that far exceeds any white racism in this country. I am tired of black peoples paranoia that white people are out to get them. I am tired of hearing a black racist tell me the only reason they are being contacted is because they are black solely because I am NOT black. I am tired of black people saying poor poor me when other races and genders and homeless and gays suffer far more prejudice than any black man does in the U.S.

Facebook post of Cynthia Whitlatch (emphasis in original). Brian Davis complained about Ms. Whitlatch's Facebook page to the Office of Professional Accountability (OPA) when he was stunned and startled to learn that the person who posted this Facebook rant was actually a Seattle police officer. The investigation of Ms. Whitlatch's abusive conduct toward Mr. Wingate began after Mr. Davis complained. The investigation, which included Ms. Whitlatch positing several versions of her story about why she stopped Mr. Wingate, led to her termination after she reported to Police Chief O'Toole that she would do the exact same thing in the same manner if she were faced with the same situation.[1] Chief O'Toole terminated Ms. Whitlatch's employment concluding that she violated SPD's policies and procedures for use of force and that she violated SPD's bias free policing policies. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Whitlatch dep., 170:5-6, 9,171:11-12.

---

[1] Ms. Whitlatch first claimed that she saw Mr. Wingate standing in the street after she passed swinging his golf club in the air at her. She also claims she knew of his hostility toward her because he glared at her and had a scowl on his "furrowed brow" and "munched up face" even though he was wearing a baseball cap and big dark glasses. In a complete about face, she next claimed that she could not see him through the rear view mirror at all because of the sun's glare on the back window. She claimed to see only a blur and hear a metallic sound, but she knew he was hostile because he glared at her. Her variously, inconsistent stories are evidence that she is not being truthful. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-47 (2000); see also, Wright v. West, 505 U.S. 277, 297 (1992)(a party's dishonesty about a material fact is "affirmative evidence of guilt").

Plaintiff's Trial Brief - 6
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

Several more examples of Ms. Whitlatch's racial animus have surfaced during the investigation and the litigation. In January 2015, Ms. Whitlatch engaged in a text exchange with another person who opined that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Then, in April and July 2015, OPA interviewed Ms. Whitlatch. Ms. Whitlatch complained to the OPA investigator that the only reason the City of Seattle dismissed all the charges against Mr. Wingate was because the municipal judge who heard the case is black. She also complained that the Deputy Police Chief who returned the golf club to Mr. Wingate with an apology did so because she is black. Ms. Whitlatch characterized the Chief's apology as a "media spectacle." Ms. Whitlatch claims that the only reason her conduct against Mr. Wingate was scrutinized by the SPD and the press is because she is white.

Ms. Whitlatch told the OPA investigator in July 2015 that she is surprised when a black person who is stopped does not claim that the stop was because of his/her race. When the investigator asked her how she could be sympathetic with minorities in light of her views, Ms. Whitlatch responded:

> Well, first of all, there's a lot of people that come to this country that have absolutely nothing that work their asses off to succeed, and they save, they live under terrible conditions, they'll, you know, lot of people in one room, but they don't say, you know, hey, you're doing this because I am Hispanic, or you're stopping me because I am gay, or because I am Asian. They come to this country, they work really hard, they try to follow the rules, they try to learn the language, they, they have a lot of ethic and integrity and they have accountability for their actions and they wanna get ahead by working hard and doing the right thing. It's the people that don't want to do anything and try to get away with things or get off or scare people by saying, hey, you know, you're only doing this 'cause I'm black . . ."

Plaintiff's Trial Brief - 7
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

July 16, 2015 interview with OPA. Ms. Whitlatch's former roommate filed a complaint with OPA alleging that Ms. Whitlatch routinely used the word "nigger" when referring to African American persons she encountered while doing her job as a police officer. The statistics of Ms. Whitlatch's arrests by race are stunning for the out of proportion number of African Americans she arrested. Several of the arrests she made of African Americans led to complaints of bias policing.

Meanwhile, Mr. Wingate finally began seeking help for the effects of the trauma he suffered as result of Ms. Whitlatch's conduct. He sought help from his friends, family, pastor, and physicians. His doctor has diagnosed him with post-traumatic stress disorder and prescribed medication for the disorder.

### III. ARGUMENT OF COUNSEL

**A. Cynthia Whitlatch was acting under color of state law when she stopped, detained, and arrested Mr. Wingate on July 9, 2014.**

The language of § 1983 as originally passed is as follows:

> [*A*]*ny person who,* under color of any law, statute, ordinance, regulation, custom, or usage of any State, *shall subject, or cause to be subjected,* any person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . . . (emphasis added).

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691-92 (1978). Under "color" of law means under "pretense" of law. *Screws v. U.S.*, 325 U.S. 91, 111 (1945) (police officers acting under color of law because authorized to act, even though not authorized to use excessive force). Acts of police officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it. If, as

Plaintiff's Trial Brief - 8
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

suggested, the statute was designed to embrace only action, which the government in fact authorized, the words "under color of any law" were hardly apt words to express the idea. Screws, 325 U.S. at 111; see also, *U.S. v. Lanier*, 520 U.S. 259, 264-65 (1997) (conviction of judge who sexually assaulted litigants and court staff held criminally liable individually for violating the victims' constitutional rights in a criminal statute corresponding to the civil application of 42 U.S.C. § 1983).

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393-394 (1989 citing *Baker* v. *McCollan,* 443 U. S. 137, 144, n. 3 (1979). Here, Ms. Whitlatch stopped, detained, and arrested Mr. Wingate because of his race—a violation of his right to be free of racial discrimination under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Ms. Whitlatch acted under of the color of state law even though she was not authorized to act with racial bias. See Screws, 32 U.S. at 111.

### B. Ms. Whitlatch violated Mr. Wingate's Equal Protection Clause of the Fourteenth Amendment to the United States Constitution when she stopped, detained, and arrested him on July 9, 2014.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976).

Plaintiff's Trial Brief - 9
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998), *cert. denied,* 525 U.S. 1154, 119 S.Ct. 1058, 143 L.Ed.2d 63 (1999); see also *Whren v. United States*, 517 U.S. 806, 813 (1996). Where the protected class is race, a U.S.C. 42 U.S.C § 1983 plaintiff must demonstrate that the conduct was intentional discrimination on account of race. *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 265 (1977)("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause"). The *Arlington* Court continued, "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.,* 429 U.S. at 266; see also, *Branch v. Tunnell*, 937 F.2d 1382, 1386-87 (9 th Cir. 1991) (rejecting that only direct evidence sufficient to prove intent).

There exists a plethora of circumstantial evidence of Ms. Whitlatch's racial animus—it is abundant.[2] The evidence includes: her roommate's claim that Ms. Whitlatch used the word "nigger" to refer to African American people she encountered at work; her email to the prosecutor attempting to increase the charges against Mr. Wingate; her Facebook posts to Brian Davis about "black racism;" ███████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████. Ms. Whitlatch's opinion that the reason the

---

[2] Ms. Whitlatch's conduct on July 9, 2014 is particularly ironic because just one day before she stopped, detained, and arrested Mr. Wingate because of his race, she attended a mandatory "Bias Free Policing" training.

Plaintiff's Trial Brief - 10
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

charges were dismissed against Mr. Wingate is because the judge is black is evidence her thinking is polluted by racial animus. Similarly, Ms. Whitlatch's opinion that Deputy Chief Carmen Best returned Mr. Wingate's golf club and apologized was due to Chief Best's race is additional evidence of her twisted focus on race. Ms. Whitlatch's serial lies about why she stopped Mr. Wingate are evidence of her discriminatory intent. Ms. Whitlatch's arrest record demonstrates that she targeted African Americans for arrest—45% of all her arrests in a one-month period were arrests of African Americans. Dkt 99-21. Nearly 36% of Ms. Whitlatch's arrests between 2010 and 2015 were African Americans. Dkt 85, Ex. A.[3] African Americans make up 7.7% of the population of the City of Seattle based on the 2010 U.S. Census.

### C. Mr. Wingate's race was a substantial factor motivating Ms. Whitlatch's stop, detention, and arrest.

Washington law prohibits discrimination on the basis of race in a place of public accommodation. See RCW 49.60.215. An action for discrimination under RCW 49.60.215 requires a showing that the unfair treatment was motivated by race. *McKinney v City of Tukwila,* 103 Wn. App. 391, 410, 13 P.3 631 (2000) (court found that disallowing access to a public place substantially motivated by race is a violation of RCW 49.60.215).

Unlike the facts of *McKinney* in which the trial court found that Mr. McKinney could produce no evidence that the officer's treatment of him was motivated by race, Mr. Wingate provides the Court and jury with abundant circumstantial evidence that Ms. Whitlatch's conduct was substantially motivated by race.

---

[3] Curiously, the statistics for Ms. Whitlatch's arrest by race between 2010-2015 do not include Mr. Wingate's arrest. Dkt. 85-1, pp. 2-8.

Plaintiff's Trial Brief - 11
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

Although Ms. Whitlatch did not call Mr. Wingate racially derogatory names at the time she stopped him, the overwhelming evidence of her conduct demonstrates that she is obsessed with race—particularly the race of African Americans. In addition to Ms. Whitlatch's obvious racial bias, her false and conflicting versions of events surrounding her stop, detention, and arrest of Mr. Wingate is further evidence that her conduct was motivated by racial bias. See *Reeves,* 530 U.S. at 146-47. In *Reeves*, the Court analyzed the circumstances where probably false explanations proffered by a defendant could be construed as circumstantial evidence of guilt:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.

*Reeves*, 530 U.S. at 147. The Court continued:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.

*Reeves*, 530 U.S. at 511 citing St*. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

Ms. Whitlatch's conflicting and false versions of why she stopped Mr. Wingate are found first in the police report filed by her fellow officer based on what she told him. The next version can be found in the report she completed to accompany the General Offense Record. Succeeding versions of her story are found in the two OPA reports dated April and July 2015. All these conflicting and sometimes directly contradicting versions are circumstantial evidence from which a trier of fact may infer that Ms. Whitlatch is merely dissembling to obfuscate her discriminatory purpose. Such an inference is consistent with the general principle that the fact

Plaintiff's Trial Brief - 12
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

finder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright v. West*, 505 U.S. 277, 296 (1992).

Ms. Whitlatch's motives are also evident in her private speech in which she agreed that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ She also ranted about what she called "black racism" in her Facebook posting about her allegations that "black people" blame "white America for their problems" instead of taking responsibility like the "immigrant" populations. All of this, combined with her accusation that a respected municipal court judge and a high ranking police chief's involvement in attempting to mitigate the damage done by Ms. Whitlatch's discriminatory act because of their race, leads to the inexorable conclusion that her actions on July 9, 2014 were motivated by Mr. Wingate's race.

### D. Ms. Whitlatch's actions were outrageous.

The tort of intentional infliction of emotional distress is the same as the tort of outrage. *Kloepfel v. Bokor,* 149 Wn.2d 192, 193, 66 P.3d 630 (2003). In order to prevail, a plaintiff must show that the conduct:

1. was extreme and outrageous;
2. was intentional or a reckless infliction of emotional distress;
3. resulted in emotional distress.

*Kloepfel v. Bokor*, 149 Wn.2d at 195.

Outrage is a jury question where the plaintiff can demonstrate that the damages are more than a mere annoyance, inconvenience, or normal embarrassment that is an ordinary fact of life. *Brower v. Ackerley*, 88 Wn. App. 87, 101-02, 943 P.2d 1141, 1149 (1997). Here, the jury will decide if Ms. Whitlatch's conduct met the standard articulated by the *Kloepfel* court.

## IV. DAMAGES

Plaintiff's Trial Brief - 13
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

**A. Mr. Wingate is entitled to recover damages for his emotional injuries.**

Emotional distress damages are "essentially subjective" and may be proven by reference to an injured party's conduct and the observations by others. *Passantino v. Johnson & Johnson Consumer Products, Inc.,* 212 F.3d 493, 513-14 (2000) citing *Carey v. Piphus,* 435 U.S. 247, 264 n. 20, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) and *Merriweather v. Family Dollar Stores,* 103 F.3d 576, 580 (7th Cir.1996) (noting that plaintiff's testimony can be enough to support emotional damages). Washington law has no severity requirement as a precondition to awarding compensatory damages. A plaintiff's testimony corroborated by a spouse or sibling is adequate to support the jury's verdict. *Id.,* citing *Herring v. Department of Social and Health Services,* 81 Wn. App. 1*,* 914 P.2d 67, 81 (1996).

Here, Mr. Wingate will offer corroborating testimony from his best friends, his sister, his pastor, and his physician. That is more than sufficient evidence to award emotional distress damages under *Passantino*.

**B. Ms. Whitlatch is liable for punitive damages.**

Punitive damages are available in a § 1983 action. *Carlson* v. *Green,* 446 U. S. 14, 22 (1980). Public officers were liable for punitive damages for their misconduct on the same basis as other individual defendants. See also *Scott* v. *Donald,* 165 U. S. 58, 88-89 (1897) (punitive damages for constitutional tort). *Smith v. Wade*, 461 U.S. 30, 35-36 (1983) (finding for the first time precisely that punitive damages are available under § 1983). The *Wade* Court held that punitive damages are available if the conduct rises to the level of reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law. *Id.*, 461 U.S.

Plaintiff's Trial Brief - 14
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970

at 51 citing *Adickes* v. *S. H. Kress & Co.,* 398 U. S. 144, 233 (1970) (BRENNAN, J., concurring and dissenting).

The *Wade* Court concluded that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendants' conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. The Court clarified that this "threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness." *Wade*, 461 U.S. at 56A.

We believe the jury will find that Ms. Whitlatch's conduct was motivated by evil intent or in reckless disregard of Mr. Wingate's federally protected rights.

### V.     CONCLUSION

Defendant Cynthia Whitlatch is liable to William Wingate for the damages she caused when she violated both state and federal law prohibiting race discrimination. Mr. Wingate respectfully requests the Court instruct the jury consistent with the legal authority cited above.

DATED this 8th day of August 2016 at Seattle, Washington.

 /s/ *Susan B. Mindenbergs*
Susan B. Mindenbergs, WSBA#20545
Attorney for William F. Wingate
119 First Avenue South, Suite 200
Seattle, WA 98104
Telephone: (206) 447-1560
Fax: (206) 447-1523
Email: smindenbergslaw@juno.com

Plaintiff's Trial Brief - 15
No. 2:15-cv-00822RAJ

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.838.4970