THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM F. WINGATE,

    Plaintiff,

v.

CYNTHIA A. WHITLATCH, in her official and individual capacities,

    Defendant.

No. 2:15-cv-00822-RAJ

ORDER

This matter comes before the Court on Plaintiff's Motion for Attorneys' Fees & Costs. Dkt. # 226. Defendant opposes the reasonableness of the requested fees. Dkt. # 238. For the reasons that follow, the Court GRANTS in part and DENIES in part Plaintiff's motion.

## I. BACKGROUND

Mr. Wingate brought this civil rights action against the City of Seattle, the Seattle Police Department, and Ms. Whitlatch after Ms. Whitlatch arrested him for refusing to drop the golf club that he used as a cane. Dkt. # 14 (Second Amended Complaint). The Court dismissed Mr. Wingate's Fourth Amendment claims and his related state claims for false arrest and false imprisonment based upon Mr. Wingate's plea agreement with the City. Dkt. # 127. The Court also dismissed the City Defendants from this action because Mr. Wingate failed to present a cognizable theory for their involvement beyond vicarious liability. *Id.*, Dkt. # 130.

The matter went to trial in October 2016. On the sixth day of trial, Mr. Wingate voluntarily dismissed his state claim for intentional infliction of emotional distress. Dkt. # 216. On November 8, 2016, the jury found that Ms. Whitlatch had violated Mr. Wingate's Fourteenth Amendment Equal Protection rights and discriminated against him in violation of Washington's Law Against Discrimination. Dkt. # 218. The jury awarded Mr. Wingate $325,000 in damages. *Id.*

Mr. Wingate's attorneys now request that the Court award them $742,279.50 in fees and $30,631.02 in costs. Dkt. ## 226, 242, 247. Ms. Whitlatch does not dispute that Mr. Wingate's attorneys should be awarded fees and costs, but does dispute the requested amount. Dkt. # 238. Ms. Whitlatch asks the Court to reduce the attorneys' total fees and costs to $376,151.82. *Id.*

**II. ANALYSIS**

A. <u>Lodestar Method</u>

Both parties agree that the proper way for the Court to determine Mr. Wingate's attorneys' fees and costs is by using the Lodestar Method. Dkt. ## 226 at p. 4, 238 at p. 4. To calculate the lodestar amount, the Court multiplies the number of hours reasonably expended by the reasonable hourly rate. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 n.2 (9th Cir. 1994); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990); *Bowers v. Transamerica Title Ins. Co.,* 100 Wash. 2d 581, 597 (1983). The hours reasonably expended must be spent on claims having a "common core of facts and related legal theories." *Martinez v. City of Tacoma,* 81 Wash. App. 228, 242–43 (1996); *Webb v. Sloan*, 330 F.3d 1158, 1168-69 (9th Cir. 2003). The Court discounts hours spent on unsuccessful claims, overstaffing, duplicated or wasted effort, or otherwise unproductive time. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987); *Bowers,* 100 Wash. 2d at 597, 600. The Court may adjust the lodestar calculation "up or down to reflect factors, such as the contingent

nature of success in the lawsuit or the quality of legal representation, which have not *already* been taken into account in computing the 'lodestar' and which are shown to warrant the adjustment by the party proposing it." *Id.* at 594 (citing *Miles v. Sampson*, 675 F.2d 5, 8 (1st Cir. 1982)) (emphasis in original); *see also Chalmers*, 796 F.2d at 1212.

   *1. Reasonable Hourly Rate*

The established rate for billing clients may be a reasonable hourly rate, but it is not conclusive. *Bowers*, 100 Wash. 2d at 597. In addition to the established rate, the court may consider the level of skill required by the litigation, time limitations imposed on the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case. *Id.*; *see also Chalmers*, 796 F.2d at 1210-11.

Ms. Mindenbergs and Ms. Sargent, attorneys for Mr. Wingate, state that their rates are $400 and $350 per hour, respectively. Dkt. # 226. However, in May 2016, Ms. Sargent stated in a declaration that her rate is $325 per hour. Dkt. # 92. Though Ms. Sargent may increase her rates as she sees fit, she offered no authority to prove that she may collect at a higher rate for work that she performed at an agreed-upon lower rate. Moreover, Ms. Sargent did not separate the hours she worked at her previous rate versus those hours she worked at her current rate. Therefore, the Court will reduce her rate to $325 per hour for the hours she worked on this matter. The Court finds that Ms. Mindenbergs's rate of $400 per hour is reasonable based on her experience and is consistent with her prior declaration in this matter. *See* Dkt. # 93. Similarly, the Court finds that Ms. Farr's hourly rate of $275 is reasonable in the local marketplace. *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009) ("The Supreme Court has consistently held that reasonable fees 'are to be calculated according to the prevailing market rates in the relevant community . . . .'") (internal citations omitted). The Court also finds that $100-$125 per hour for paralegal work is reasonable in the local marketplace. Ms. Mindenbergs billed out Mr. Proctor's

paralegal services at $150 per hour, and though the Court finds this steep when compared to similarly situated paralegals in Seattle's marketplace, it nonetheless approves of this rate for the work done in this matter. Finally, the Court finds that Ms. Catunao's hourly rate of $125 is reasonable.

The Court notes that Ms. Mindenbergs claims to have employed a third-year law student, Ms. Bakken, to help with the matter. However, there are no time entries for Ms. Bakken—Ms. Mindenbergs merely wrote Ms. Bakken a check for $634.00, Dkt. # 227-1 at p. 18—and nothing to give the Court reason to believe her fees were reasonable or even related to this matter. Therefore, the Court rejects any fees that Mr. Wingate's attorneys may seek for Ms. Bakken.

*2. Time Spent*

The fee applicant bears the burden of documenting the hours expended in litigation and must submit evidence in support of those hours. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (*i.e.,* senior partner, associate, etc.). *Bowers*, 100 Wash. 2d at 597.

The Court is concerned with quite a few of the attorneys' time entries that appear duplicative and inefficient. For example, Ms. Mindenbergs and Ms. Sargent reviewed documents—a task that an associate or even a law student could perform—for more than 153 hours. Dkt. ## 227-1 at pp. 7-11; 229-1 at pp. 5-6, 8-11, 13, 15. In fact, the paralegals on this matter did review those documents—for over 20 hours. Dkt. # 227-1 at pp. 25-28. In addition, Ms. Mindenbergs and the paralegals appeared to prepare the same exhibits. *Id.* at 4-5, 8, 16, 31. Moreover, Mr. Wingate's attorneys appear to have written off hours spent working on unsuccessful claims or unrelated press conferences

and community events.[1]  However, several entries—*see, e.g.*, Dkt. ## 227-7 at pp. 2-3, 19; 229-1 at pp. 2; 230-1 at pp. 2-4, 6; 231-1 at pp. 2—remain regarding these claims and media related events.  The attorneys also appeared to bill for clerical tasks that were then duplicated by paralegals.  For example, Ms. Sargent billed over three hours to fax documents, Dkt. # 229-1 at pp. 6-8, and her paralegal also billed to fax the same documents, Dkt. # 231-1 at pp. 6-8.  Experienced lawyers should not bill for tasks properly performed by legal assistants or paralegals to ensure such hours would be compensable in the event their client was successful in a request for attorney's fees.

The Court is also concerned with the amount of time expended on tasks for which experienced attorneys, such as Ms. Mindenbergs and Ms. Sargent, should be familiar or for which lower billing associates or paralegals should have been utilized.  For example, Ms. Mindenbergs spent over five hours researching and drafting a single jury instruction on racial animus, over three hours reviewing model jury instructions when the majority of those instructions did not apply to this case, over four hours researching three of the most common Rules of Evidence, and over two hours drafting a single jury instruction on probable cause.  Dkt. # 227-1 at pp. 13, 15.  Ms. Mindenbergs also spent over five hours researching issues for a trial brief; but the trial brief merely summarized the arguments that Ms. Mindenbergs had already been working on and preparing for months.  *Id.* at p. 11.  Ms. Sargent spent more than four hours reviewing Ms. Whitlatch's Answer to a Complaint that she then spent over four hours amending, ten hours preparing initial disclosures, over eleven hours preparing a four-page surreply that references common Rules of Evidence, nearly seven hours reviewing a notice of

---

[1] The Court agrees that the press releases and community events in this matter were unrelated to the legal claims and therefore counsel cannot recover for those hours.  Moreover, the Court finds Mr. Wingate's Fourth Amendment and Washington state claims regarding false arrest and false imprisonment to be separate from the successful discrimination claims.  The former claims turned on the issue of probable cause, which was resolved based on Mr. Wingate's plea agreement with the City.  Therefore, in this case, the legal theories were sufficiently divided such that counsel may not recover for the time spent on those unsuccessful claims.  *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) ("A plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's successful § 1983 claim.").

appearance, over four hours reviewing a one-sentence docket entry requiring Mr. Wingate to file a response, and almost three hours reviewing a minute order from this Court that merely set the date for the six-day trial. Dkt. # 229-1 at pp. 3-4, 15, 21, 23, 26. Remarkably, Ms. Mindenbergs claims that she required 58 hours to research the issues and prepare Mr. Wingate's reply brief to the instant motion, and her paralegal required 28 hours to do the same. Dkt. # 243 at p. 10. That is 86 hours spent preparing a brief that, by definition, raises no new issues or arguments. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

       The Court further notes that Ms. Sargent employed a law student, Ms. Catunao, during the pendency of this litigation. Dkt. # 229 at ¶ 22. Ms. Sargent billed out the law student at the same rate as a new paralegal. *Id.* However, a new paralegal has completed a certain level of training that a law student has not. Though the Court finds Ms. Catunao's rate reasonable, the Court is distressed to find that Ms. Sargent did not discount Ms. Catunao's hours to account for her lack of training and knowledge on the matter. Ms. Sargent seeks to bill for 89.35 hours of Ms. Catunao's work when much of this work was below the level of efficiency expected of paralegals and junior associates. For example, Ms. Catunao spent over five hours drafting a surreply that references common Rules of Evidence and for which Ms. Sargent had already billed over eleven hours to draft, over four hours researching case law for a single jury instruction on probable cause that Ms. Mindenbergs then spent over two hours drafting, and almost six hours drafting an unnecessary motion in anticipation of a motion that was not filed. Dkt. # 232-1 at pp. 2-4. The Court recognizes the advantages in hiring law students and finds this tradition beneficial to both law firms and law students. However, the Court is also aware that attorneys use a reasonable approach when billing clients for law students' time, often taking into account the students' learning curve both in terms of

subject matter and general inexperience with the kind of research and writing necessary in the law firm context. The approach taken here was not reasonable.

The Court found dozens of instances of inefficiencies and duplications in the bills that counsel submitted. The Court accounted for such overbilling and finds the following calculations reasonable:

- Ms. Mindenbergs may collect for 600 hours;
- Ms. Sargent may collect for 610 hours;
- Ms. Farr may collect for 200 hours;
- Ms. Calvo may collect for 200 hours;
- Mr. Proctor may collect for 95 hours;
- Ms. Renton may collect for 300 hours;
- Ms. Catunao may collect for 8 hours;
- The attorneys may collect their requested costs, including the cost of Mr. Fury, in the amount of $36,931.02 (Dkt. # 242-1 at p. 4).

Altogether, the Court awards Mr. Wingate's attorneys $600,431.02 in attorney's fees and costs.

### III. CONCLUSION

For all the foregoing reasons, the Court **GRANTS in part and DENIES in part** Mr. Wingate's motion for attorney's fees and costs. Dkt. # 226. Mr. Wingate's attorneys' incurred $600,431.02 in fees and costs. Ms. Whitlatch must pay these fees and costs within thirty (30) days of the date of this Order.

Dated this 2nd day of May, 2017.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER-7